**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

**NAUTILUS INSURANCE COMPANY, an Arizona corporation, as subrogee of CRYSTAL TOWNHOMES LLC and DIAMOND NATIONAL REALTY, LLC, Georgia corporations;**

**Plaintiff,**

**CASE NO:**

**v.**

**AXIS INSURANCE COMPANY, an Illinois corporation;**

**Defendant.**

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, NAUTILUS INSURANCE COMPANY ("Nautilus") in its own right and as subrogee of Crystal Townhomes, LLC ("Crystal") and Diamond National Realty, LLC ("Diamond") (Crystal and Diamond are collectively referenced throughout as the "Subrogors" or the "Insureds") brings this action against Defendant, AXIS INSURANCE COMPANY ("Axis" or "Defendant Axis"), and alleges:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

2. Venue is proper in this district because "a substantial part of the events . . . giving rise to the claim occurred" in this district. 28 U.S.C. § 1391(a)(2).

3. More specifically, venue and personal jurisdiction are proper because: 1) Defendant Axis' subject insurance policy was issued, delivered, and incepted in Fulton County, Georgia; 2) Defendant Axis conducted business with the Subrogors in Fulton County, Georgia; 3) the Underlying Action (defined *infra*) was litigated in Fulton County, Georgia; 4) the property covered by Defendant Axis' Policy is located in Fulton County, Georgia, and 5) the tortious acts and breach occurred in Fulton County, Georgia.

## THE PARTIES

4. Nautilus is an insurance carrier organized under the laws of the State of Arizona, with its principal place of business in Arizona. Nautilus is duly authorized to write liability insurance policies in Georgia.

5. Axis is organized under the laws of the State of Illinois, with its principal place of business and corporate headquarters located in Chicago, Illinois.

6. Axis may be served via its registered agent for service of process in Georgia: Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, GA, 30092, USA.

7. The Subrogors, Crystal Townhomes, LLC and Diamond National Realty, LLC, are Georgia limited liability corporations and, upon information and belief, their respective members are citizens of Georgia. The Subrogors are not parties to this action, and Plaintiff, as the sole real party in interest under Fed. R. Civ. P. 17(a), sues in its own name.

8. Diamond operates a rental property, Crystal Townhomes ("Townhomes") in Fulton County, Georgia, located at 3804 Martin Luther King Jr. Drive SW, Atlanta, GA 30331.

## GENERAL ALLEGATIONS

***THE INSURANCE POLICIES***

9. Both Diamond and Crystal are named insureds on an Axis occurrence policy, in effect from January 16, 2019, to January 16, 2020. *See* Exhibit 1, Policy No. P-001-000076753-01 ("Axis Policy"), Declarations and Schedule of Named Insureds Endorsement.

10. Under the terms and conditions of the Axis Policy, coverage was extended to Diamond and Crystal for a total of $1,000,000 per each occurrence, or $2,000,000 in aggregate. *Id.* The Axis Policy is a primary policy, that gives Axis the right to

control the defense of the insured. *See id.*, at respectively Section I, ¶ 1.a and Section IV, ¶ 4.a.

11. Nautilus issued an excess policy to Diamond and Crystal for the same policy period, in effect from January 16, 2019, to January 16, 2020. *See* Exhibit 2, Policy No. AN062198 ("Nautilus Policy" or "Nautilus Excess Policy"), Declarations and Schedule of Named Insureds Endorsement.

12. The Nautilus Policy insured Diamond and Crystal for $5,000,000 per 'Loss Event' but only for loss in excess of the Axis Policy, providing:

> We will pay on behalf of the "insured" the "ultimate net loss" **in excess of the "underlying insurance limit"** because of injury or damage caused by a "loss event" to which this insurance applies[.]

*Id.*, Section I, ¶ 1.a (emphasis added).

13. The Nautilus Policy further provides:

> Transfer Of Rights Of Recovery Against Others To Us
>
> **If the "insured" has rights to recover all or part of any payment we have made under this policy those rights are transferred to us.** The "insured" must do nothing after loss to impair them. At our request, the "insured" will bring "suit" or transfer those rights to us and help us enforce them.

*Id.*, Section III, ¶ 14 (emphasis added).

***THE UNDERLYING ACTION***

14. On September 8, 2019, an unknown male drugged and raped a minor (hereinafter, the "Minor") on the premises of the Townhomes causing both trauma

and severe bodily injury to the Minor. *See O.R. et al. v. Crystal Townhomes LLC*, Case No. 22EV001706 ("Underlying Action").

15. On January 19, 2021, "O.R.," (hereinafter, "Underlying Plaintiff"), individually and as natural parent and guardian of the Minor, sued Crystal and Diamond in the State Court of Fulton County, Georgia. *See* Exhibit 3*, Underlying Action Complaint.*

16. Plaintiff sued Crystal and Diamond under a theory of premises liability, and demanded jury trial. *Id.*

***AXIS REJECTS ADVICE OF COUNSEL AND EXPOSES INSUREDS***

17. In October 2022, the Underlying Plaintiff sent Axis a settlement demand for $5,000,000, pursuant to O.C.G.A. § 51-12-14. *See* Exhibit 4, October 28, 2022, Demand (the "First Demand.")

18. Axis rejected the First Demand and did not make a counteroffer.

19. One month later, on November 1, 2022, the Underlying Plaintiff filed a Motion for Sanctions against Crystal and Diamond for spoliation of evidence. *See* Underlying Action, *Motion for Sanctions* filed November 1, 2022.

20. On March 7, 2023, the Underlying Plaintiff sent Axis a time-limited Offer of Settlement. *See* Exhibit 5, March 7, 2023, Offer of Settlement ("Second Demand" or "Offer of Settlement").

21. Specifically, the Underlying Plaintiff reduced her demand by $4,000,000 and offered to settle at $1,000,000 – within the Axis Policy limits. *Id.*

22. Prior to expiration of the Offer of Settlement, Axis' own appointed defense counsel ("Axis Counsel" or "Counsel") contacted Axis and recommended acceptance of the Offer of Settlement explaining:

> We have substantial experience in litigating premises liability matters and have carefully considered the facts and circumstances of this case. Given the crime at the property, the strength of the Plaintiff's expert anticipated testimony, the motion for spoliation of evidence, and the potential difficulty in obtaining summary judgment in this case, **we believe that the $1,000,000 offer represents a reasonable settlement value in this matter and recommend that the outstanding offer of judgment be accepted**.

*See* Exhibit 6, Settlement Demand Evaluation Report, at pg. 4 (emphasis added).

23. Axis' Counsel also warned Axis of the dangers of an excess verdict. Noting a recent $7.6 million verdict in a similar case, Axis' Counsel explained:

> As we have noted in prior reports, in the event of an adverse verdict the damages awarded could be substantial.

*Id.*

24. Counsel also explained that *there would likely be no further opportunity for Axis to settle within policy limits* and that attorney fees may be awarded should Axis allow the offer to expire:

> We have litigated with Plaintiffs counsel on numerous occasions **and do not believe that he would further reduce the demand**…If the offer is rejected and the Plaintiff receives a verdict at trial of $1,250,000 or greater, the Plaintiff would be entitled to recover attorney's fees and

> expenses of litigation as a matter of law under the Offer of Judgement statute.

*Id.* at 5 (emphasis added).

***NAUTILUS WARNS AXIS TO PROTECT INSURED***

25. Alarmed by Axis' failure to protect its Insureds against the possibility of an excess verdict, Nautilus attempted to intervene.

26. On March 14, 2023, Nautilus sent correspondence to Axis warning that Nautilus would hold Axis responsible if Axis breached its duty to protect the Insureds, stating:

> Nautilus Insurance Company reserves all rights available under the Commercial Excess Liability Policy and the controlling law to hold AXIS responsible should AXIS's failure to resolve the claims against the insured within the underlying policy result in exposure to the Commercial Excess Liability Policy.

*See* Exhibit 7, March 14, 2023, Letter from Nautilus to Axis.

27. Nautilus contacted Axis again on March 29, 2023, pointing out that Axis was ignoring the advice of its own appointed defense Counsel. Nautilus explained:

> Given defense counsel's attached updated evaluation, where their **report states they "believe that the $1,000,0000 represents a reasonable settlement value in this matter and recommend that the outstanding offer of judgment be accepted",** Nautilus again requests that the claim be settled within the primary policy limit on or before the date for expiration of the Offer of Judgment.

*See* Exhibit 8, March 29, 2023, Email from Nautilus to Axis (emphasis added).

***SUBSTANTIAL POSSIBILITY OF EXCESS JUDGMENT***

28. Ultimately, notwithstanding the clear advice and recommendation of Counsel, Axis rejected the $1,000,000 Offer of Settlement and exposed its Insureds to a possible multimillion dollar excess judgment. *See* Exhibit 9, May 29, 2024, Letter from Plaintiff (documenting Axis' offer of $0 - the "Third Demand").

29. Moreover, Axis made no offer in response to the First Demand or Second Demand, effectively offering $0 in a case in which its appointed Counsel advised that it should accept a $1,000,000 Offer of Settlement. *Id.*

30. Prior to expiration of the Offer of Settlement, Axis also allowed the expert witness deadlines to expire without securing a rebuttal expert.

***ORDER ENTERED AGAINST DIAMOND AND CRYSTAL***

31. On May 28, 2024, the Court in the Underlying Action issued an order prohibiting Crystal and Diamond from introducing evidence that the incident was not foreseeable. *See* Exhibit 10, May 28, 2024, Spoliation Order in Underlying Action.

32. The Order was premised on facts known by Axis at the time it rejected the $1,000,000 demand – specifically, Crystal and Diamond lost certain evidence during a software update – resulting in spoliation sanctions claim that significantly affected defense of the case. *Id.*

33. Despite the risks of an adverse ruling in the spoliation hearing, Axis offered $0 in advance of the hearing – choosing to gamble the Insureds futures for its own interests.

34. On May 29, 2024, the Underlying Plaintiff sent Crystal and Diamond a settlement demand letter for $6 million. *See* Exhibit 9, Third Demand.

35. As predicted by Axis' Counsel, the $1,000,000 offer was gone, and the Insureds faced not only the risk of a large excess judgment – but also a likely adverse attorney fee award based on rejection of the $1,000,000 Offer of Settlement.

36. Seeking to carefully evaluate possible exposure to the Insureds, Nautilus requested a comprehensive case evaluation from outside counsel. *See* Exhibit 11, July 5, 2024, Defense Counsel Evaluation Report.

37. Counsel reported a probable verdict between $5 million and $8 million with the possibility of a $10 million judgment explaining:

> An expected verdict is between $5 million and $8 million. **A possible verdict could exceed $10 million.**

*Id.* at pg. 14 (emphasis added).

***NAUTILUS INTERVENES TO PROTECT INSUREDS FROM AXIS' BREACH***

38. As a direct and proximate result of Axis' rejection of an offer within Axis' Policy limits, the Insureds faced a pronounced possibility of a $10,000,000 judgment. *Id.*

39. The Axis Policy and Nautilus Excess Policy provided combined maximum policy limits of $6,000,000. Therefore, both the $6,500,000 median of the expected verdict range, and the possible $10,000,000 verdict, would have exposed the Insureds to an excess judgment.

40. On July 30, 2024, Nautilus contacted Axis and reiterated its demand that Axis resolve the Underlying Action. *See* Exhibit 12, July 30, 2024, Letter to Axis. Nautilus informed Axis that it would settle the claim in excess of Axis' policy limits should Axis fail to resolve the claim. *Id.*

41. Nautilus further informed Axis that it would pursue Axis for all amounts paid under the Nautilus Policy, should Axis fail to resolve the Underlying Action. *Id.*

42. Axis, however, did not resolve the Underlying Action in response to Nautilus' reiterated demand.

43. Therefore, as a proximate cause of Axis' breach, Nautilus – not Axis – negotiated the lowest possible settlement with Underlying Plaintiff and paid under protest, to protect its interests and those of the Insureds.

44. The Parties then settled for $4,000,000, with Nautilus paying $3,000,000 and Axis tendering $1,000,000.

## COUNT I – EQUITABLE SUBROGATION

45. Nautilus incorporates paragraphs 1 - 44 above, as if fully set forth herein.

46. Due to Axis's negligent rejection of the $1,000,000 Offer of Settlement, Nautilus was required to pay $3,000,000 to protect its own interests, as well as the interests of Diamond and Crystal.

47. Nautilus did not act as a volunteer in making the payment but was forced to make the payment, under protest, as a direct and proximate result of Axis' rejection of the $1,000,000 Offer of Settlement.

48. Nautilus, as an excess insurer, was not primarily liable for the debt. Nautilus incurred liability only because of Axis's negligent failure to settle.

49. The entire debt was paid, and subrogation would not cause an injustice to the rights of third parties.

50. Under the terms of the Nautilus Policy:

> If the "insured" has rights to recover all or part of any payment we have made under this policy those rights are transferred to us.

*See* Exhibit 2, Nautilus Policy at Section III, ¶ 14.

51. Nautilus is therefore equitably subrogated in place of Diamond and Crystal to pursue indemnification for the $3,000,000 in losses caused by Axis. *See e.g., Home Ins. Co. v. N. River Ins. Co.*, 192 Ga. App. 551, 554 (1989); *ACE Prop. & Cas. Ins. Co. v. Liberty Surplus Ins. Corp.*, No. 1:15-CV-0949-WBH, 2016 WL 11717585, at 1 (N.D. Ga. Mar. 1, 2016).

## COUNT II – NEGLIGENT FAILURE TO SETTLE AGAINST AXIS

52. Nautilus incorporates paragraphs 1 - 44 above, as if fully set forth herein.

53. Underlying Plaintiff suffered substantial bodily injury and asserted a claim against Axis' Insureds.

54. Underlying Plaintiff offered to settle the case for $1,000,000, within the liability coverage of the Insureds' Axis Policy.

55. Knowing that there was a substantial possibility of an excess judgment, Axis rejected the $1,000,000 Offer of Settlement, forcing the case to continue.

56. As Diamond's and Crystal's insurer, Axis owed both the Insureds and Nautilus a duty to act with a reasonable standard of care:

> In deciding whether or not to settle the case, [primary insurer] Great American had a duty to "accord the **interest of its insured and any excess or umbrella insurance company** the same faithful consideration it gives its own interest."

*Great Am. Ins. Co. v. Int'l Ins. Co.,* 753 F. Supp. 357, 363 (M.D. Ga. 1990)(internal citations omitted, emphasis added).

57. Further, the reasonable standard of care applicable to a primary insurer, requires the primary insurer to protect against the risk of excess judgment:

> An insurer must act reasonably in responding to a settlement offer, bearing in mind that, in deciding whether to settle, the insurer must give the insured's interests in avoiding liability for a judgment in excess of the policy limits the same consideration that it gives its own interests in paying less than the policy limits.

*Camacho v. Nationwide Mut. Ins. Co.*, 188 F. Supp. 3d 1331, 1339 (N.D. Ga. 2016), aff'd, 692 Fed. Appx. 985 (11th Cir. 2017) (internal citations omitted); *See also*, *GEICO Indem. Co. v. Whiteside*, 311 Ga. 346, 352, 857 S.E.2d 654, 662 (2021).

58. Axis breached its duty of a reasonable standard of care that it owed to the Insureds and Nautilus by:

a. Ignoring the advice of its own appointed Counsel, and rejecting an offer within policy limits, knowing its actions placed its Insureds at great risk of an excess judgment;

b. Failing to handle Underlying Plaintiff's claim with ordinary care and with equal consideration for the interests of the Insureds;

c. Placing the financial interests of Axis superior to the interests of Diamond and Crystal;

d. Failing to make reasonable efforts to settle Underlying Plaintiff's claim;

e. Negligently and carelessly adjusting and defending against Plaintiff's claim; and;

f. Failing to act reasonably and to use that degree of care which is exercised by an ordinarily prudent insurer under the same or similar circumstances.

59. As a direct, proximate, and foreseeable result of Axis' breach, Nautilus was damaged in the amount of $3,000,000, in that Axis' unreasonable rejection of the $1,000,000 Offer of Settlement forced Nautilus to pay $3,000,000 to protect against a possible excess judgment.

## COUNT III – PUNITIVE DAMAGES AGAINST AXIS

60. Nautilus incorporates Paragraphs 1 - 44 and 52 - 59 as if fully set forth herein.

61. Axis has acted willfully and intentionally with malice, wantonness, and oppression, and has exhibited an entire want of care which raises the presumption of conscious indifference to the consequences of its actions.

62. As a result, Nautilus is entitled to an award of punitive damages pursuant to O.C.G.A. § 51-12-5.1, in an amount sufficient to penalize and punish Axis for its wrongful acts and to deter it from similar conduct in the future.

## COUNT IV – ATTORNEY'S FEES AND COSTS AGAINST AXIS

63. Nautilus incorporates Paragraphs 1 - 44 and 52-59 as if fully restated herein.

64. Axis has been stubbornly litigious, has acted in bad faith, and has caused Nautilus unnecessary trouble and expenses.

65. Specifically, prior to expiration of the Underlying Action $1,000,000 Offer of Settlement, Axis' own appointed Counsel warned Axis in writing:

a. That there was a substantial possibility of an excess judgment; and

b. That the $1,000,000 Offer of Judgment would be Axis' only opportunity to settle within policy limits.

66. Prior to expiration of the $1,000,000 Offer of Settlement, Nautilus also warned Axis that it was ignoring the advice of counsel and failing to protect the Insureds:

> Given defense counsel's attached updated evaluation, where their **report states they "believe that the $1,000,0000 represents a reasonable settlement value in this matter and recommend that the outstanding offer of judgment be accepted",** Nautilus again requests that the claim be settled within the primary policy limit on or before the date for expiration of the Offer of Judgment.

*See* Exhibit 8, March 29, 2023, Email from Nautilus to Axis (emphasis added).

67. Despite these multiple written warnings and admonitions, Axis ignored the advice of Counsel, ignored the advice of Nautilus, and made no effort to resolve the claim within Axis' Policy limits.

68. Axis offered $0 in response to the First Demand from Underlying Plaintiff, $0 in response to the $1,000,000 Second Demand from Underlying Plaintiff, and $0 when advised by its own appointed Counsel that it should accept the $1,000,000 Offer of Judgment.

69. Having ignored the advice of Counsel, Axis then allowed its expert deadline to expire without retaining a rebuttal expert.

70. Axis then offered $0 in advance of a hearing on spoliation, despite being advised by Counsel that an adverse ruling was possible.

71. Thereafter, when Axis' rejection of the $1,000,000 Offer of Settlement proximately caused the possibility of a $10 million excess judgment – Axis paid its policy limits to protect itself – but offered $0 towards the excess liability it had caused.

72. Axis has been stubbornly litigious, has acted in bad faith, and has caused Nautilus unnecessary trouble and expenses. Therefore, Nautilus is entitled to recover reasonable expenses of litigation, including attorney's fees, under O.C.G.A. § 13-6-11.

## REQUEST FOR RELIEF

**WHEREFORE**, Nautilus respectfully requests the following relief:

a. An award of actual damages in the amount of $3,000,000;

b. Pre-judgment and post judgement interest pursuant to O.C.G.A. § 51-12-14 and O.C.G.A. § 7-4-12.

c. An award of punitive damages against Axis pursuant to O.C.G.A. § 51-12-5.1, in an amount to be determined at trial;

d. An award of Nautilus's reasonable expenses of litigation, including attorney's fees, pursuant to O.C.G.A. § 13-6-11; and

e. Such other relief as the Court may deem just and appropriate.

## DEMAND FOR JURY TRIAL

Nautilus demands jury trial on all issues so triable.

Dated: July 27, 2026

Respectfully submitted,

**DAVIS LAW FIRM**

*s/Todd M. Davis*
**TODD M. DAVIS, ESQ.**
GA BAR NO. 107809
TD@DavisPLLC.com
231 East Adams Street
Jacksonville, FL 32202
904-400-1429 (T)
904-638-8800 (F)